Leonard H. Sandler, J.
In this action, submitted to this court on stipulated facts supplemented as to one circumstance by testimony, plaintiff seeks reimbursement under a major medical expense group policy issued by defendant to the State of New York as employer on October 18,1971, for expenses incurred in connection with services rendered by a certified psychologist.
At the outset, two critical facts seem relatively free from doubt. (1) Plaintiff would be entitled to the reimbursement claimed if the services in question had been rendered by a licensed physician rather than a certified psychologist. (2) The policy as written does not authorize reimbursement as covered medical expenses for such services when rendered by one other than a licensed psysician.
The critical question is whether plaintiff is entitled to recover under an amendment to subdivision 5 of section 221 of the New York Insurance Law (L. 1969, eh. 765, § 2), passed in 1969, which in substance mandated that where a group policy ‘1 provides for reimbursement for the diagnosis and treatment of mental, nervous, or emotional disorders or ailments a subscriber to such * # * policy # * * shall be entitled to reimbursement for such covered diagnosis or treatment which is performed by a physician or a duly certified and registered psychologist when the services rendered are within the lawful scope of their practice
Defendant resists the claim on two grounds:
The first is that the amendment does not apply since the master policy was issued many years before the amendment.
The second is that in any event the amendment cannot be reasonably construed to require payment for medical services by psychologists, since, among other things, that construction would involve a violation of the statutory prohibition against practice of medicine by nonlicensed physicians (Education Law, § 6521).
The second defense does not require extended discussion. The amendment quite plainly contemplated reimbursement for expenses incurred to certified psychologists for treatment of emotional disorders. Any doubt on this score is surely dispelled by the 1971 revision which in this regard was obviously designed *968 to make absolutely clear that which was previously intended. (L. 1971, eh. 1211, § 2, amdg. Insurance Law, § 221, subd. 5, par. [e].)
Defendant’s argument, that the clause limiting reimbursement to psychologists ‘ ‘ when the services rendered are within the lawful scope of their practice ” excludes treatment of emotional disorders, is surely untenable. That view grossly distorts the natural meaning and obvious intent of the amendment.
Nor is there any substance to the claim that the reimbursement to psychologists for treatment of emotional disorders would contradict the prohibition against practice of medicine by nonlicensed physicians. (Education Law, § 6521.) It is surely difficult to accept at this date that the numerous psychologists openly engaged in such work (Education Law, art. 153) are lawbreakers, subject to criminal sanctions. Assuming any validity to the argument at all, it is surely basic law that the specific enactment sanctioning reimbursement for such services overrides the general prohibition relied upon by the defendant.
As to the principal defense that the 1969 amendment does not apply to this group policy, the following facts are relevant :
The group policy was first issued in 1957, and was made terminable ‘ ‘ at the option of the Insurance Company on any anniversary of the date of issue by giving at least ninety days prior written notice to the Employer. ’ ’ By the terms of an amendment (No. 9), the anniversary date was deemed to be November 1, in each year. Under another amendment (No. 4) the defendant was permitted to change the premium date once annually on 60 days’ notice and more frequently “ whenever the terms of the policy are changed.”
In support of its claim that the amendment effective in September, 1969 is inapplicable where the ‘1 master policy ’ ’ was issued previously, defendant relies primarily on Mulligan v. Travelers Ins. Co. (306 N. Y. 805, affg. 280 App. Div. 764 [1st Dept., 1952], revg. 113 N. Y. S. 2d 77 [App. Term, 1st Dept., 1952]). The dissenting opinion in the Appellate Term, adopted by the Appellate Division, alluded (p. 80) to “ the general principle that, in absence of clear contrary indication, statutes are not to be given retroactive effect ’ ’, and went on to say with regard to the statute there in question (p. 80): “ Nor is the master policy a new policy issued annually because renewed each year by payment of an adjusted premium. Section 161 does not in terms or by necessary implication evidence an intent to affect renewals of policies previously issued under other statutes.”
*969 As against this, plaintiff relies on the later decision of Western N. Y. Med. Plan v. Wikler (8 A D 2d 988 [4th Dept., 1959]) in which it was held, with regard to another statute affecting insurance, that it applied to an insured covered after a renewal date where the insurer had the absolute right to terminate the policy on its aniversary date. The doctrine of this case was extended in dictum to policies in which the insurer had the right to amend the policy without the employer’s consent. (Flax v. O’Dea, 48 Misc 2d 5 [Sup. Ct., 1965].) And the rule of these cases was squarely applied to a case involving the amendment before this court, on facts basically indistinguishable, in a thoughtful opinion by Judge Stecher of this court. (Gladstone v. Metropolitan Life Ins. Co., 66 Misc 2d 656.)
Although the issue does not Seem to me free from doubt, I have concluded that the view of the matter adopted in the Gladstone case is more probably correct. As I review the language of the 1969 statutory amendment, in the light of its obvious purpose, I am inclined to the opinion that the Legislature intended it to apply to renewals of group policies of the type in issue.
This opinion is buttressed by the obvious difference in language between the Mulligan statute and the instant amendment. The statute in Mulligan (supra) was emphatically prospective in wording: “ No policy of group life insurance shall be delivered or issued for delivery in this state unless ’ ’. The amendment here is written in the present tense throughout, manifesting a clear purpose to apply it as promptly as appropriate.
That the amendment omits a specific direction that it be applied to renewals seems to me more likely an inadvertence than the expression of an intent not to apply it to renewals. The fact that the revised amendment, effective July 6, 1971 (L. 1971, ch. 1211, § 4), explicitly directed its application to renewals is more likely a clarification of what was originally intended than a change of policy.
However, the 1971 revision should certainly eliminate all doubt with regard to the application of the amendment to those who become covered subsequent to the renewal following the effective date of the 1971 amendment.
For the above reasons, judgment may be entered for the plaintiff in the amount demanded, with interest and costs.